UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
:
MIODRAG BELJAKOVIC,                              :
:
                          Plaintiff,       :
:
       -against-                                    :        04 Civ. 3694 (RJH)
:
MELOHN PROPERTIES, INC.                          :        **MEMORANDUM**
                                                :        **OPINION AND ORDER**
                        Defendant.       :
:
------------------------------------------------------x

      *Pro se* plaintiff Miodrag Beljakovic brings this age discrimination action against his employer, Melohn Properties, Inc. ("Melohn"), pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 – 634 ("ADEA") seeking monetary damages and other relief.[1] By notice of motion dated March 15, 2005, defendant Melohn moved to dismiss on the ground that the Court lacks subject matter jurisdiction over the matter because the grievance and arbitration procedure of a collective bargaining agreement (the "CBA") entered into by Melohn and plaintiff's union, the Service Employees International, Local 32BJ, AFL-CIO, is the "sole and exclusive remedy" available to plaintiff. For the reasons that follow, the motion is denied.

## DISCUSSION

      The issue presented by defendant's motion is whether, as a member of Local 32BJ, plaintiff has waived his right to bring this age discrimination claim in federal court. Paragraph 23 of the CBA would appear to be dispositive of that issue, in that it expressly precludes a wide range of discrimination claims unless they are made pursuant to Articles VII and VIII of the

---

[1] Plaintiff also brings state law claims for harassment and intentional infliction of emotional distress.

CBA, which is purportedly the "sole and exclusive" remedy for such claims, including this ADEA claim:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, or any other similar laws, rules or regulations. *All such claims shall be subject to the grievance and arbitration procedure (Articles VII and VIII) as sole and exclusive remedy for violations.* Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

(Def.'s Mot. to Dismiss, Ex. E, at 84) (emphasis added). The language of paragraph 23 is clear and unequivocal. The question, then, is whether it is enforceable, at least to the extent that it purports to bar this action.

In *Alexander v. Gardner-Denver Co.,* 415 U.S. 36 (1974), the Supreme Court held that an employee does not forfeit his right to a judicial forum for a Title VII claim if he "first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." 415 U.S. at 49. Although *Alexander* was an "election of remedies" case – the defendant union argued that the arbitration proceeding had *res judicata* force – the Court also noted that a lawsuit under Title VII asserts "independent statutory rights accorded by Congress," which, unlike contractual rights, are not subject to prospective waiver. *Id.*, at 49-51. Later cases reaffirmed this principle in other contexts, including claims brought pursuant to 42 U.S.C. § 1983, and the Fair Labor Standards Act. *See McDonald v. West Branch,* 466 U.S. 284 (1984) (claim brought under 42 U.S.C. § 1983 cannot be prospectively waived by CBA); *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728 (1981) (same holding under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*).

2

Although none of these cases was litigated under the ADEA, at the time they were decided there was simply no reason to suspect that the outcome would be different in the context of an age discrimination claim. Indeed, in light of the Court's broad pronouncement in *Alexander* that "there can be no prospective waiver of an employee's rights under Title VII," and the application of this principle to other federal statutes in *Barrentine* and *McDonald,* many courts extended *Alexander* to a growing list of other federal statutes, including the ADEA. *See, e.g., Criswell v. Western Airlines, Inc.*, 709 F.2d 544, 548 (9th Cir. 1983) (CBA could not preclude ADEA claim because "[w]hile *Alexander* dealt with Title VII, substantive rights arising under the ADEA are to be similarly construed."); *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544, 1553 (10th Cir. 1988) (refusing to grant preclusive effect to arbitral fact finding in ADEA context "[b]ecause Congress closely modeled the ADEA upon Title VII"); *Borenstein v. Tucker*, 757 F.Supp. 3, 5 (D.Conn. 1991) ("This court agrees . . . that Congress did not intend that a contractual arbitration provision should preclude a plaintiff from access to a judicial forum for a claim brought pursuant to the ADEA.").

But at least one open question remained: if unions could not prospectively waive federal statutory rights for its members, could the members themselves do so? Relying on *Alexander* and its progeny, several courts said no, primarily because the Supreme Court had so thoroughly sanctified the role of federal courts in vindicating federal statutory rights, *Alexander*, 415 U.S. at 56, and in the process called into question the efficacy of the arbitration process as a means to resolution. *See, e.g., Alford v. Dean Witter Reynolds, Inc.,* 905 F.2d 104, 107 (5th Cir. 1990) (holding that *Alexander* precluded prospective waiver of the right to sue under Title VII, even where the waiver is agreed to by an individual employee); *Nicholson v. CPC Int'l Inc.,* 877 F.2d 221, 229 (3d Cir. 1989) (same, ADEA).

In 1991, the Supreme Court granted certiorari in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) and overturned these courts. In *Gilmer*, the plaintiff-employee was required by his employer to register as a securities representative with the New York Stock Exchange. His registration application provided, among other things, that he "agree[d] to arbitrate any dispute, claim, or controversy" arising between him and his employer, including claims arising out of his termination. 500 U.S. at 23. After he was terminated at the age of 62, Gilmer filed a complaint with the EEOC and brought an ADEA claim in federal court. The defendant employer moved to compel arbitration of the claim, relying on the arbitration provision of the NYSE registration application. *Id*. The district court denied the motion, relying on *Alexander* for the proposition that like Title VII claims, ADEA claims are not subject to prospective forum waivers. 500 U.S. at 24. The Fourth Circuit reversed, finding nothing in the language or legislative history of the ADEA to preclude the enforcement of *individually* negotiated arbitration agreements. *Id.*

The Supreme Court agreed with the Fourth Circuit, holding that under the Federal Arbitration Act some "statutory claims [, including ADEA claims,] may be the subject of an arbitration agreement", at least where the agreement (and hence the waiver) is individually negotiated. 500 U.S. at 26. In reaching this conclusion, of course, the Court was forced to confront – and either overturn or distinguish – *Alexander's* admonition that "independent statutory rights accorded by Congress" cannot be prospectively waived. 415 U.S. at 49-50. The Court chose the latter road, explaining that *Alexander* "provide[s] no basis for refusing to enforce . . . [an] agreement to arbitrate [Gilmer's] ADEA claim" for a number of reasons, including because:

> [T]he arbitration in [the *Alexander* line of cases] occurred in the context of a collective-bargaining agreement, [which means that] the claimants there were

4

>represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case.

*Id.*, at 35.  Notwithstanding the Court's effort in this direction, *Gilmer* and *Alexander* remain difficult to reconcile.

The problem is, if an employee's rights under Title VII are not subject to prospective waiver, as the Court noted in *Alexander*, 415 U.S. at 51, how could Gilmer's right to bring an ADEA claim in federal court have been waived, especially when the two statutes are so closely related?  *Criswell,* 709 F.2d at 548.  One possibility, of course, is that *Gilmer* overruled *Alexander*, at least to the extent that *Alexander* serves as an absolute bar to the waiver of federal forum rights (in discrimination cases) via collective bargaining agreements.  *See, e.g., Air Line Pilots Ass'n, Intern. v. Northwest Airlines, Inc.*, 199 F.3d 477, 484 (D.C. Cir. 1999) (union claiming that *Gilmer* "effectively supersedes" *Alexander*); *Brisentine v. Stone & Webster Engineering Corp.*, 117 F.3d 519, 525 (11th Cir. 1997) ("It may be that the Supreme Court [in *Gilmer*] . . . cut *Alexander* back so far that it will not survive.").  Indeed, that must be defendant's argument in the case if this Court is to enforce paragraph 23 of the CBA.  Although defendant has not briefed that issue, the Court has considered the argument carefully, and concludes that *Gilmer* and *Alexander* are in fact reconcilable on the following principle:  an *individual* may prospectively waive his own statutory right to a judicial forum to litigate an ADEA claim, but his *union* may not do so for him.

The Supreme Court has explicitly declined to address this issue.  *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 77 (1998).[2]  But all of the circuits to have considered the

---

[2] In *Wright* the Supreme Court acknowledged that "[t]here is obviously some tension between" *Alexander* and *Gilmer*, namely, that "[w]hereas [*Alexander*] stated that 'an employee's rights under Title VII are not susceptible of

5

question, other than the Fourth, and including the Second, are in accord with this conclusion. *See, e.g., Rogers v. New York University*, 220 F.3d 73, 75 (2d Cir. 2000) ("The arbitration provision in the instant case, by which employees purport to waive their right to a federal forum with respect to statutory claims, is contained in a union-negotiated CBA. Under [*Alexander*], to which this Court and a majority of others adhere, such provisions are not enforceable."); *Tran v. Tran,* 54 F.3d 115, 117-18 (2d Cir. 1995) (relying on *Barrentine* and *Alexander* to conclude that employer could not compel union employee to arbitrate federal statutory claims even though CBA required arbitration); *E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 748 (9th Cir. 2003) ("In *Gilmer*, the Court did not explicitly overrule *Alexander*, but limited its holding to the collective bargaining context."); *Air Line Pilots Ass'n, Intern. v. Northwest Airlines, Inc.*, 199 F.3d 477 at 484 (collecting cases). And the Seventh Circuit has explicitly held that a CBA waiver cannot deprive a union member of the right to bring an ADEA claim in federal court. *E.E.O.C. v. Bd. of Governors of State Colleges and Univs.,* 957 F.2d 424, 431 (7th Cir. 1992) ("[I]t is well established that unions cannot waive employees' ADEA or Title VII rights through collective bargaining.").[3] Simply put, there is no compelling authority for the proposition that *Gilmer* overruled *Alexander*, and until the Supreme Court clarifies that it has, this Court will apply the law "as it stands." *Air Line Pilots Ass'n, Intern. v. Northwest Airlines, Inc.*, 199 F.3d at 484.

---

prospective waiver,' . . . *Gilmer* held that the right to a federal judicial forum for an ADEA claim could be waived." *Id.*, at 76-77. The *Wright* Court declined to resolve that tension, however, explaining that it was "unnecessary to resolve the question of the validity of a union-negotiated waiver [because] no such waiver" had occurred in Wright's case. 525 U.S. at 77.

[3] The few decisions holding that a CBA can waive a plaintiff's forum-selection rights with respect to other federal statutory claims are unpersuasive. *Almonte v. Coca-Cola Bottling Co.,* 959 F.Supp. 569, 573-74 (D. Conn. 1997) (finding that CBA could waive employee's ability to bring Section 1981 claims in federal court)*; Austin v. Owens-Brockway Glass Container, Inc.,* 78 F.3d 875, 885 (4th Cir. 1996).

6

The Court reaches this decision notwithstanding the cases cited by defendant in support of its motion to dismiss, which include *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1964), *Adirondack Transit Lines, Inc. v. United Transportation Union, Local 1582*, 305 F.3d 82, 86 (2d Cir. 2002) and *O'Connell v. Hove*, 22 F.3d 463 (2d Cir. 1994).[4] *Maddox* holds generally that "individual employees wishing to assert *contract grievances* [where the contract is subject to suit under Section 301(a) of the Labor Management Relations Act ("LMRA")] must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress," which would obviously include any procedure outlined in a CBA. 379 U.S. at 652 (emphasis added). *Adirondack Transit* is to the same effect. 305 F.3d at 86 (*citing Maddox*, 379 U.S. at 652). But neither case is relevant on the facts here, where plaintiff's claim is not for breach of a CBA (or any other agreement that is subject to Section 301(a) of the LMRA), but instead is brought to assert an "independent statutory right[] accorded by Congress" and enshrined in the ADEA.

*O'Connell* is similarly inapposite. The *O'Connell* plaintiffs were a group of unionized *federal employees* (of the Federal Deposit Insurance Corporation) and the question before the Second Circuit was whether "the [Civil Service Reform Act ("CSRA")] require[d]" plaintiffs "to follow the negotiated grievance procedures set out in the [u]nion's collective bargaining agreement with the FDIC." 22 F.3d at 466-467. In holding that the CBA procedures were exclusive (and thus precluded federal jurisdiction), the Second Circuit distinguished its holding from *Barrantine* and *Alexander* on the grounds that neither involved the CSRA:

> [t]he issue in *Barrantine* was whether a provision in a collective bargaining agreement, requiring the submission of "any controversy" to the negotiated grievance procedures, barred a private FLSA action in district court. The issue in

---

[4] The Court also recognizes that the Supreme Court in *Wright*, 525 U.S. 70 raised the possibility that a "clear and unmistakable" union-negotiated waiver may be enforceable. *Id.*, at 79-81. Until the Supreme Court actually says that such a waiver is possible, however, the Court will apply *Alexander* as written.

7

> *Alexander* was whether a private party who had submitted a claim to arbitration pursuant to a collective bargaining agreement could then pursue a trial *de novo* in federal court under Title VII of the Civil Rights Act of 1964. Neither of those cases involved the CSRA, nor any other comprehensive statute regarding labor-management relations.

*Id.* at 471. For that same reason *O'Connell* is distinguishable on these facts – plaintiff is not a federal employee, and is therefore not subject to the CSRA or (for that matter) any other "comprehensive statute regarding labor-management relations".[5]

## CONCLUSION

Read together, *Gilmer* and *Alexander* establish that only an individual can determine in what forum he will vindicate certain statutory rights, including rights under the ADEA. For this reason, the Court holds that paragraph 23 of the CBA, which was negotiated between plaintiff's union and his employer, cannot preclude subject matter jurisdiction. Defendant's motion to dismiss is therefore denied.

SO ORDERED.

Dated: New York, New York
October 17, 2005

Richard J. Holwell
United States District Judge

---

[5] Defendant also cites *Sinacore v. Dept. of Correction Services*, 1995 WL 760660 (N.D.N.Y. Nov. 27, 1995), contending that the district court "rejected a similar argument made by [a] *pro se* plaintiff", in that it "granted the employer's motion to dismiss . . . on the ground of lack of subject matter jurisdiction *because* the plaintiff's claims were subject to a collective bargaining agreement." (Def's Memo, p. 6 (emphasis added)). This argument is disingenuous at best. Sinacore brought suit against his employer (the New York State Department of Correctional Services ("DOCS")) on the ground that DOCS unfairly disciplined him, denied him due process, breached various aspects of a collective bargaining agreement, and violated his Thirteenth and Fourteenth Amendment rights. *Sinacore*, 1995 WL 760660, at *2. DOCS moved to dismiss on the ground that the district court lacked subject matter jurisdiction. Although the district court agreed and dismissed the case, it did not do so "because" Sinacore's claims were "subject to a [CBA]" and therefore precluded. (Def's Memo., p. 6). To the contrary, the court found (i) that the constitutional claims were so "meritless" that it could not properly exercise federal question jurisdiction; and (ii) that the remaining non-constitutional claims failed to raise federal questions because, among other reasons, DOCS could not properly be considered an "employer" under the Labor Management Relations Act. *Sinacore*, 1995 WL 760660, at *2-*4. Nowhere in the opinion does the *Sinacore* court state or suggest that ADEA claims – or any other federal statutory claims – must be arbitrated pursuant to a CBA *before* they are brought in federal court.

8